UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 16-20208-CR-MORENO

UNITED STATES OF AMERICA,

v.

JEREMY BUENO,

    Defendant.
_____/

# DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD SENTENCING VARIANCE

COMES NOW the Defendant, JEREMY BUENO ("Jeremy"), through undersigned counsel, and hereby submits the following sentencing memorandum and moves this Honorable Court for a downward variance from his guideline range and states in support of said motion:

## Advisory Sentencing Guidelines

The Supreme Court's *Booker* decision grants discretion to this Court to vary from the guidelines and tailor a sentence that is in line with the full range of statutory considerations set forth in 18 U.S.C. § 3553(a) (hereinafter referred to as "3553"). *See generally United States*

*v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Rita v. United States*, 551 U.S. 338 (2007). Additionally, the Supreme Court has emphasized that district courts are only required to give "some weight" to the advisory guidelines just like the other 3553. *See Kimbrough v. United States*, 128 S. Ct. 558 (2007); *United States v. McBride*, 511 F. 3d 1293 (11th Cir. 2007). "If a district court applies the guidelines as though they were mandatory or treats the range as presumptively reasonable, that is procedural error." *United States v. Hill*, 643 F.3d 807, 880 (11th Cir. 2011).

Rather, the guidelines are a starting point, or the initial benchmark, for a sentence. *See Gall,* 552 U.S. at 49-50. The remaining factors outlined in 3553 must also be considered in fashioning a sentence that is sufficient but not greater than necessary. *See United States v. Pugh*, 515 F.3d 1179, 1203-04) (11th Cir. 2008).

## Presentence Report Guideline Range

The Presentence Report ("PSR") calculates Jeremy's total offense level after acceptance at 15 resulting in a guideline imprisonment range of 18 to 24 months. However, if this Court were to sustain Jeremy's objections to the Presentence Report [D.E. 26], his total offense level

after acceptance would be 12 resulting in a guideline range of 10 to 16 months.

According to the Plea Agreement, the Government will be requesting a sentence of 24-months imprisonment notwithstanding any guideline range this Court determines at sentencing.  For reasons explained below, this Court should reject the Government's recommendation as such a sentence is clearly greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553.  Instead, Jeremy respectfully requests this Court to consider and grant a downward variance from the guideline range this Court ultimately determines.

## Nature and Circumstance of the Offense

There is little doubt that Jeremy's crime is a serious one. Personal identification fraud is a pervasive crime throughout the nation and especially in South Florida.  He will undoubtedly be punished for this crime and he fully accepts that.  However, to truly appreciate why a variance is appropriate in this case, this Court must understand all the circumstances of how this crime came to be and how this case was ultimately prosecuted.

In May of 2013, Jeremy, who is 26 years old, began working for Apple, Inc. ("Apple") in Paramus, New Jersey. Jeremy had always been good with computers and technology so working for Apple was a great fit. He worked as a sales representative selling all kinds of Apple products at an Apple retail store. Eventually, in August of 2014, he transferred to the Apple store in Aventura, Florida. There he continued working as a sales representative.

In December of 2014, an individual who identified himself as "Vitico" approached Jeremy at the Aventura Apple store and asked Jeremy to call him whenever a shipment of the I-Phone 6 came in. At the time, the I-Phone 6 was Apple's latest phone and a hot seller. Vitico explained to Jeremy that he owned a cell phone store, and he planned to resell the phone. Vitico further explained that either himself or someone on his behalf would come to the store to make purchases.

From December 2014 through the beginning of February 2015, Jeremy did not know Vitico or individuals acting on Vitico's behalf were using counterfeit credit cards to make purchases. This is because the identifications presented matched the credit cards used to make the purchases. Around the beginning to the middle of February 2015,

Jeremy suspected that the credit cards used to make purchases were counterfeit. Afterwards, he confronted Vitico about the matter. Vitico admitted that the cards were counterfeit, but offered Jeremy money in exchange for continuing the relationship. Although Jeremy initially declined, he afterwards agreed to continue the relationship and sold Apple products to Vitico and others acting on Vitico's behalf knowing that they were making the purchases using counterfeit credit cards.

Apple security eventually noticed an unusually high number of credit card chargebacks associated with sale transactions that Jeremy handled. Apple Security confronted Jeremy on <u>March 20, 2015</u> where he fully cooperated, confessed his wrongdoing, discussed his dealings with Vitico and was immediately fired.

Unbeknownst to Jeremy, Vitico had another scheme in place at another Apple store in Dadeland involving another Apple employee. On or about the same time Vitico dealt with Jeremy, Vitico recruited Dadeland Apple employee, Kevin Mena, to facilitate the sale of Apple products on counterfeit credit cards.[1] Like in Jeremy's case, on <u>April 28, 2015</u> (over one month after Jeremy admitted his wrongdoing to

---

[1] Jeremy did not know about this other scheme nor did he know Kevin Mena.

Apple when confronted by Apple security) Apple security approached Kevin Mena about the unusually high chargeback situation, and he too admitted his wrongdoing, and, just like Jeremy, told Apple security about Vitico.  Fortunately for Kevin Mena, however, law enforcement approached him that same day.  Kevin Mena again admitted his wrongdoing and told law enforcement about his dealings with Vitico. The next day, April 29, 2015, Kevin Mena cooperated with law enforcement in assisting law enforcement in the arrest of Vitico.

Upon arrest, Vitico, gave a partial confession, but apparently lied about his true identity.  Vitico identified himself as "Ramon Concepcion" but later admitted after his arrest and apparently sometime after he was indicted that his true name was Rodolfo Martinez (hereinafter referred to as "Vitico").[2]

Through no fault of his own, law enforcement did not approach Jeremy until <u>May 11, 2015</u> when, again, Jeremy fully cooperated.  He described his relationship with Vitico, identified him in a photo-lineup, and also identified Vitico's girlfriend in a photo-lineup.[3]

---

[2] At the time of his arrest and supposed cooperation, Rodolfo Martinez gave law enforcement the name of "Ramon Concepcion".  In fact, the initial indictment charged listed Rodolfo's name as "Ramon Concepcion".  Later, a superseding indictment listed the proper name of Rodolfo Martinez.

[3] At times, Vitico used his girlfriend to make purchases using counterfeit credit cards.

- 6 -

On May 15, 2015, both Vitico and Kevin Mena were indicted.[4] Of significance for this Court's consideration is the fact that neither Vitico or Kevin Mena were charged with aggravated identity theft. Kevin Mena was sentenced to 21 months. Rodolfo Martinez, the clear leader and recruiter of the scheme, was sentenced to 33 months despite lying about his true name and having another federal case from the Middle District of Florida.

A year later Jeremy was indicted on **March 31, 2016** despite cooperating a month **BEFORE** Kevin Mena and Vitico. More importantly, despite Jeremy's earlier cooperation[5], he was charged with aggravated identity theft. While Jeremy appreciates the fact that the Government has since agreed to dismiss the aggravated identity theft count in exchange for his guilty plea, the Government still comes to sentencing requesting a 24-month sentence which is the equivalent of an aggravated identity theft plea. Such a recommendation is simply wrong and unfair.

---

[4] Both Rodolfo Martinez and Kevin Mena were charged in the same indictment – USA v. Rodolfo Martinez, Kevin Mena – Court Case No. 15-2013-CR-MARTINEZ/SEITZ. Kevin Mena received 21 months and Rodolfo Martinez received 33 months. Judge Patricia A. Seitz was the sentencing judge. Moreover, around the same time of the indictment, Rodolfo Martinez had another pending federal case in the Middle District of Florida where he was charged with false statement on an application for a U.S. passport. That case was eventually transferred and consolidated with the case in front of Judge Patricia A. Seitz.

[5] Jeremy has continued to cooperate with law enforcement. Recently, in June of 2016, he again debriefed with law enforcement about his criminal conduct and has agreed to continue to cooperate with law enforcement.

The main difference between Jeremy and Kevin Mena is that Kevin had the good fortune of law enforcement approaching him first despite Jeremy's admission and cooperation a full month **BEFORE** to Apple security.  For the Government to now ask for a 24-month sentence when Kevin Mena received less is arbitrary and unfair.  There is nothing in the history of this case to demonstrate that Jeremy would have acted any different if law enforcement happened to have approached him first.

Furthermore, while the Guidelines do account for and reward a Defendant for accepting responsibility in a case that is pending, the Guidelines do not account for acceptance and cooperation that occurs during the investigative, pre-indictment phase of a case.  In such a circumstance, the Court can consider this factor to justify a downward variance.

### **History and Characteristics of the Defendant**

Jeremy was born on May 7, 1990 in Queens, New York.  Despite being raised under lower-class socioeconomic conditions, Jeremy grew up in a loving, close Latin family.  Jeremy's father is a farmer who resides in the Dominican Republic.  Jeremy's mother is a caretaker to

Jeremy's grandmother and also resides in the Dominican Republic. Jeremy's sister is a full-time student at Liberty University in Lynchburg, Virginia. Both his parents and sister are aware of this case and are fully supportive of Jeremy. In fact, his parents are staying in Miami, Florida until his sentencing. Jeremy's family will be at his sentencing to demonstrate their love and support of Jeremy.

In 2008, Jeremy graduated from Clifton High School in Clifton, New Jersey. He attended Berkeley College in Woodland Park, New Jersey from 2008 through 2009 and again from 2012 through 2013. He also attended Southern Connecticut State University in New Haven, Connecticut from 2010 and 2011. Jeremy was studying computer science and engineering but was unable to complete his degree due to financial issues. Nevertheless, Jeremy intends to eventually complete his coursework so that he can earn his degree. Jeremy believes he has two semesters of course studies left to complete his degree.

Jeremy is a pleasant, mild-mannered young man. Jeremy has absolutely no criminal history. Thus, the impact of his arrest and prosecution has been profound on him and his family. He will forever regret the day he agreed to conspire with Vitico.

Since being appointed to represent Jeremy, undersigned counsel can attest to how Jeremy has been respectful throughout the entire process.  An example of this point is that once the indictment was returned and an arrest warrant was issued, law enforcement contacted Jeremy, who was residing in Denver, Colorado at the time, and advised him he had to surrender.  Jeremy immediately made arrangements to travel to South Florida for the purpose of self-surrender.

## The Need to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public, Promote Rehabilitation and to Avoid Unwarranted Sentencing Disparities

At sentencing, the Defense expects that the Court will see first-hand Jeremy's family support.  The Defense further expects that the Court will hear from Jeremy's family about the support and love that will be waiting for him once his sentence is complete and he re-enters society.  Notwithstanding this support, there is nothing in Jeremy's background that would suggest to this Court that he will recidivate in the future.  In fact, all the evidence points to how Jeremy will land on his feet and not ever have contact with the criminal justice system again.

From the Defense's perspective, the Government's recommended 24-month sentence is devoid of any consideration of Jeremy's background and past and continued full cooperation. A sentence below the guideline range is clearly appropriate, just, and sufficient to meet the sentencing goals of 18 U.S.C. § 3553.

Respectfully submitted,

By: s/Deric Zacca
DERIC ZACCA, ESQUIRE
Fla. Bar No. 0151378

Deric Zacca, P.A.
110 Tower
110 SE 6th Street, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: (954) 450-4848
Facsimile: (954) 450-4204

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 17, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in this matter by CM/ECF.

s/Deric Zacca
DERIC ZACCA, ESQUIRE